**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JUSTIN A. HUTCHINSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-666** |
| **MICHELE DAUZET, WARDEN** | **SECTION: "G"(3)** |

**ORDER AND REASONS**

Before the Court are Petitioner Justin Hutchinson's ("Hutchinson") objections[1] to the Report and Recommendation of the United States Magistrate Judge assigned to this case.[2] Petitioner, a state prisoner incarcerated at the David Wafe Correctional Center in Homer, Louisiana, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[3] The Magistrate Judge recommended that the petition be dismissed with prejudice.[4] Hutchinson objects to the Magistrate Judge's Report and Recommendation.[5] Having considered the Magistrate Judge's Report and Recommendation, Hutchinson's objections, the record, and the applicable law, the Court overrules Hutchinson's objections, adopts the Magistrate Judge's recommendation, and dismisses this action with prejudice.

[1] Rec. Doc. 10.

[2] Rec. Doc. 9.

[3] Rec. Doc. 1.

[4] Rec. Doc. 9.

[5] Rec. Doc. 10.

## I. Background

### *A. Procedural Background*

On March 11, 2021, a grand jury in the 24th Judicial District Court for the Parish of Jefferson indicted Hutchinson with one count of second degree murder (Count One), one count of obstruction of justice (Count Two), and two counts of possession of a firearm by a convicted felon (Counts Three and Four).[6] On May 26, 2022, a jury found Hutchinson guilty as charged.[7] On July 29, 2022, the trial court sentenced Hutchinson to a term of life imprisonment as to Count One, forty years imprisonment as to Count Two, and twenty years imprisonment as to Counts Three and Four, each sentence to be served at hard labor.[8] As to Counts One, Three and Four, the trial court ordered that the sentences would be served without the benefit of probation, parole or suspension of sentence.[9] The trial court also ordered that the sentences as to Counts One, Three, and Four were to be served concurrently with one another, and the sentence as to Count Two consecutive to the other sentences.[10]

On August 18, 2023 the Louisiana Fifth Circuit Court of Appeal affirmed the convictions and sentences.[11] On February 24, 2024, the Louisiana Supreme Court denied Hutchinson's related writ application.[12]

---

[6] Rec. Doc. 6-1 at 10.

[7] *Id.* at 198–99.

[8] *Id.* at 231–33.

[9] *Id.*

[10] *Id.*

[11] *State v. Hutchinson*, 22-536 (La. App. 5 Cir. 8/18/23), 370 So. 3d 769.

[12] *State v. Hutchinson*, 23-1296 (La. 2/27/24), 379 So. 3d 662.

On April 1, 2025, Hutchinson filed the instant habeas corpus petition raising the following claims: (1) the evidence presented at trial was insufficient because the State failed to prove his identity as the shooter; (2) the trial court erred in denying in part Hutchinson's motion in limine and allowing testimony regarding the matching casing found in Bogalusa, Louisiana; and (3) jury selection violated his right to equal protection.[13] The State filed a response on May 8, 2025.[14] Hutchinson did not file a reply brief.

***B. Report and Recommendation Findings***

The Magistrate Judge recommended that the petition be dismissed with prejudice.[15] As to Hutchinson's sufficiency of the evidence claim, the Magistrate Judge found that the witnesses' testimony identifying Hutchinson as the perpetrator of the crime was corroborated by enough evidence to permit a rational trier of fact to find beyond a reasonable doubt that Hutchinson was the perpetrator of the crimes.[16]

Second, the Magistrate Judge addressed Hutchinson's argument regarding "other crimes" testimony; namely, the trial court allowing Detective Buttone to testify that a casing found in Bogalusa, Louisiana, matched the gun taken from the victim's vehicle.[17] The Magistrate Judge noted that any claim that admission of the evidence violates state law is not cognizable on federal

---

[13] Rec. Doc. 1.

[14] Rec. Doc. 7.

[15] Rec. Doc. 9 at 47.

[16] *Id.* at 19–24.

[17] *Id.* at 24.

habeas review.[18] The Magistrate Judge also found that admission of the evidence was not so extremely prejudicial that it rendered the trial unfair.[19]

Finally, the Magistrate Judge addressed the claim that the prosecutor exercised peremptory strikes in a racially discriminatory manner.[20] The Magistrate Judge noted that the prosecution offered race-neutral reasons for the challenged strikes, and the state trial court found that the challenges were not exercised in a discriminatory manner.[21] Because Hutchinson offered no persuasive rebuttal to the state courts' finding of neutrality, the Magistrate Judge found this claim to be meritless.[22]

## II. Objections

### *A. Hutchinson's Objections*

Hutchinson objects to the Report and Recommendation.[23] First, Hutchinson claims that the evidence against him was insufficient because the State did not negate any reasonable probability of misidentification.[24] Hutchinson asserts that there were internal contradictions in the testimony of the two witnesses who identified him and irreconcilable conflicts between the testimony and the physical evidence.[25] Hutchinson points out that Detective Rullman testified that he was driving

---

[18] *Id.* at 27.

[19] *Id.* at 29.

[20] *Id.* at 30.

[21] *Id.* at 44–45.

[22] *Id.* at 46.

[23] Rec. Doc. 10.

[24] *Id.* at 2.

[25] *Id.*

by and saw the suspect from behind as he was running from the scene.[26] According to Hutchinson, Mitchell Videau identified Hutchinson as the shooter because Videau was "highly incentivized to please the Prosecution."[27] Additionally, Hutchinson asserts that the weapon used to kill the victim had DNA evidence on it that conflicted with Videau's testimony.[28]

Next, Hutchinson argues that the admission of "other crimes" was so unduly prejudicial that it rendered the trial fundamentally unfair.[29] Hutchinson asserts that the evidence allowed the jury to draw the conclusion that Hutchinson was involved in a similar incident and find guilt on that basis.[30]

Finally, Hutchinson argues that he is entitled to relief on his *Batson* claim.[31] Hutchinson asserts that the State used its peremptory strikes to remove all of the potential African American jurors.[32]

## III. Standard of Review

### *A. Review of the Magistrate Judge's Report and Recommendation*

In accordance with Local Rule 73.2, this case was referred to the Magistrate Judge to provide a Report and Recommendation. The District Judge "may accept, reject, or modify the recommended disposition" of a Magistrate Judge on a dispositive matter.[33] The District Judge must

---

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.* at 3.

[30] *Id.* at 4.

[31] *Id.*

[32] *Id.* at 5.

[33] Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

"determine *de novo* any part of the [Report and Recommendation] that has been properly objected to."[34] The District Court's review is limited to plain error for parts of the report which are not properly objected to.[35]

### *B. Standard of Review Under the AEDPA*

Following the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), the standard of review used to evaluate issues presented in habeas corpus petitions was revised "to ensure that state-court convictions are given effect to the extent possible under law."[36] For questions of fact, federal courts must defer to a state court's findings unless they are "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[37] A state court's determinations on mixed questions of law and fact or pure issues of law, on the other hand, are to be upheld unless they are "contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[38]

Regarding this standard, the United States Court of Appeals for the Fifth Circuit has explained:

> A state-court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state-court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct

---

[34] Fed. R. Civ. P. 72(b)(3).

[35] *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

[36] *Bell v. Cone*, 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403–404 (2000)).

[37] 28 U.S.C. § 2254(d)(2).

[38] *Id.* § 2254(d)(1).

> governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.[39]

If Supreme Court case law "give[s] no clear answer to the question presented, let alone one in [the petitioner's] favor, 'it cannot be said that the state court unreasonably applied clearly established Federal law.'"[40] Additionally, "unreasonable is not the same as erroneous or incorrect; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."[41]

## IV. Law and Analysis

### *A. Sufficiency of the Evidence Claim*

Hutchinson objects to the Magistrate Judge's determination that he was not entitled to the relief on his sufficiency of the evidence claim.[42] Hutchinson claims that the evidence against him was insufficient because the State did not negate any reasonable probability of misidentification.[43]

*Jackson v. Virginia* sets the framework for a sufficiency of the evidence claim, stating that an "applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."[44] In determining whether the evidence was sufficient, the relevant inquiry is not whether the Court believes the evidence established "guilt beyond a reasonable doubt;" but rather, "after viewing the

---

[39] *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010) (citations and quotation marks omitted).

[40] *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (quoting *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

[41] *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) (quotation marks omitted).

[42] Rec. Doc. 10 at 2.

[43] *Id.*

[44] 443 U.S. 307, 324 (1979).

evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[45]

It is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."[46] Thus, "[t]he jury's finding of facts will be overturned only when necessary to preserve the fundamental protection of due process of law."[47] The Supreme Court has recognized that "the assessment of the credibility of witnesses is generally beyond the scope of [habeas] review."[48]

Hutchinson does not claim that the evidence is insufficient to prove the elements of the crimes.[49] Instead, Hutchinson claims that the State failed to prove he was the person who committed the crimes.[50] Thus, Hutchinson asserts that the evidence was insufficient to prove his identity as the perpetrator.[51]

The State bears the burden of proving the perpetrators identity in addition to the elements of the crime.[52] The State is required to "negate any reasonable probability of misidentification in order to carry its burden of proof."[53] A positive identification of the defendant by one witness "is sufficient to support a conviction."[54] It is not the function of the reviewing court to "assess

---

[45] *Id.* at 318–19.

[46] *Id.* at 319.

[47] *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008) (quotation marks and citations omitted).

[48] *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

[49] Rec. Doc. 10 at 2.

[50] *Id.*

[51] *Id.*

[52] *State v. Draughn*, 05-1825 (La. 1/17/07), 950 So. 2d 583, 593.

[53] *State v. Benoit*, 07-35 (La. App. 5 Cir. 5/29/07), 960 So. 2d 279, 282.

[54] *Id.*

credibility or reweigh the evidence," as those issues are "within the sound discretion of the trier of fact."[55]

At trial, the State introduced evidence from multiple witnesses to prove Hutchinson's identity as the perpetrator of the crimes. Hutchinson was convicted of the second-degree murder of Rashad Lewis.[56] The homicide occurred around 10:00 p.m. on October 21, 2022 in the parking lot of 3J's Bar on Lapalco Boulevard in Marrero, Louisiana.[57] At trial, Retired Detective Donald Zanotelli ("Zanotelli") testified that he reviewed surveillance video from 3J's Bar.[58] Zanotelli explained that the owner of bar identified Hutchinson, Mitchell Videau ("Videau"), and the victim as persons depicted on the video.[59]

Detective Dwain Rullman ("Rullman") testified that he was driving down Lapalco Boulevard in an unmarked vehicle when he heard gunshots coming from 3J's Bar.[60] Rullman testified that he saw a black male wearing a yellow shirt, and white and blue pants run from 3J's to behind his car with a gun in his hand.[61] Rullman then followed the suspect down Betty Boulevard, until he lost sight of the suspect when the suspect went over the fence.[62] Rullman went

---

[55] *State v. Thomas*, 08-813 (La. App. 5 Cir. 4/28/09), 13 So. 3d 603, 607.

[56] *Hutchinson*, 370 So. 3d at 776.

[57] *Id.*

[58] Rec. Doc. 6-1 at 798–802.

[59] *Id.* at 804.

[60] *Id.* at 809.

[61] *Id.* at 809, 814–15, 830.

[62] *Id.* at 814–15, 824, 830–31.

into the backyard and located a weapon.[63] At trial, Rullman identified Hutchinson as the individual in the yellow shirt and white and blue pants from that night.[64]

Mitchell Videau testified that he witnessed an individual known as "Jeeky" shoot the victim.[65] Videau affirmed that he knew "Jeeky" from the Lincolnshire neighborhood, which was across the street from 3J's Bar.[66] Videau also testified that he was arrested and charged with obstruction of justice and felon in possession of a firearm.[67] Videau admitted that he entered into a plea agreement with the State, wherein he pled guilty to obstruction of justice and the felon in possession of a firearm charge was dismissed.[68] Videau was sentenced to one year imprisonment with credit for time served and was subsequently released.[69] At trial, Videau admitted that he was facing other criminal charges, but was not given or promised anything in relation to those charges.[70]

Detective Anthony Buttone ("Buttone") also testified that he obtained a search warrant for an Instagram account associated with Hutchinson.[71] Buttone testified that two messages were sent from the account on October 22, 2020, stating that the individual was at 3J's Bar.[72] Buttone also testified that Hutchinson posted photographs on the account wearing the same shoes that were

---

[63] *Id.* at 815–16.

[64] *Id.* at 817.

[65] *Id.* at 938.

[66] *Id.* at 938–39.

[67] *Id.* at 940.

[68] *Id.* at 926, 956, 962, 965.

[69] *Id.* at 956.

[70] *Id.* at 957–58, 965–66.

[71] *Id.* at 1105, 1120.

[72] *Id.* at 1121–22, 1138–39.

worn by the shooter and holding the same yellow shirt as the shooter.[73] Buttone compared photographs of Hutchinson with the shooter depicted in the surveillance video and opined that they were the same person.[74]

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Hutchinson's identity as the perpetrator was proved beyond a reasonable doubt. Hutchinson suggests that Videau's testimony was not credible because Videau was offered a plea agreement in exchange for his testimony. The jury heard evidence about the plea agreement and weighed the credibility of Videau's testimony. Videau's testimony was also corroborated by the testimony of the officers, the surveillance footage, and the Instagram evidence. The Court cannot second-guess the weight afforded to the evidence or the jury's credibility determinations. Hutchinson has not demonstrated that he is entitled to relief on this issue.

### ***B. Admission of "Other Crimes" Evidence***

Hutchinson objects to the Magistrate Judge's determination that he was not entitled to relief on his claim that the trial court erred in denying in part his motion in limine and allowing testimony of a matching casing found in Bogalusa.[75] Specifically, Hutchinson argues that admission of evidence regarding a matching casing found in Bogalusa was so prejudicial that it rendered the trial fundamentally unfair.[76]

"[F]ederal courts sitting in habeas do not review state courts' application of state evidence law."[77] Thus, federal courts do not review the propriety of state court evidentiary rulings, unless

[73] *Id.* at 1122.

[74] *Id.* at 1108.

[75] Rec. Doc. 10 at 3.

[76] *Id.* at 4.

[77] *Jones v. Cain*, 600 F.3d 527, 536 (5th Cir. 2010) (citations omitted).

the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair.[78]

Due process has been violated only if the findings of the court was "so egregious" that it "render[ed] the trial fundamentally unfair."[79] Relief can only be granted if the evidence in question "played a crucial, critical, and highly significant role in the trial."[80] When inquiring whether due process was violated, the court must consider the challenged evidence "in the context of the entire trial."[81] Relief cannot be offered if the challenged evidence "was not the principal focus at trial and the errors were not so pronounced and persistent that it permeates the entire atmosphere of the trial."[82] Thus, to establish a fundamentally unfair trial, a habeas petitioner must show that "there is a reasonable probability that the verdict might have been different had the trial been properly conducted."[83]

Hutchinson has not shown that the admission of evidence regarding a matching casing found in Bogalusa was so prejudicial that it rendered the trial fundamentally unfair. The evidence did not play a crucial, critical, or significant role in the trial. The trial court excluded all evidence regarding Hutchinson's alleged connection with Bogalusa where the subsequent shooting occurred, and only allowed evidence regarding the matching casing to prove that a gun was

[78] *See Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992).

[79] *Gonzalez v. Thaler*, 643 F.3d 425, 430 (5th Cir. 2011).

[80] *Id.*

[81] *Id.* at 431.

[82] *Id.* (citations and quotation marks omitted).

[83] *Kirkpatrick v. Blackburn*, 777 F.2d 272, 279 (5th Cir. 1985).

removed from the scene of the Marrero shooting for purposes of the obstruction of justice charge.[84] Buttone testified that Hutchinson was not a suspect in the Bogalusa crime.[85]

Further, there was substantial, compelling evidence of Hutchinson's guilt including: (1) video surveillance of the shooting; (2) Videau's eyewitness testimony that Hutchinson was the perpetrator; (3) Rullman's identification of Hutchinson as the person he saw running with a firearm in his hand and wearing the same clothing as the perpetrator depicted in the surveillance video; (4) Hutchinson's Instagram pictures depicting him wearing the same clothing and shoes as the perpetrator; and (5) Hutchinson's Instagram message that he was at 3J's Bar on the evening of the murder. Thus, Hutchinson has not shown that there is a reasonable probability that the outcome of the trial would have been different had the motion in limine been granted, as the admission of the matching casing was not so prejudicial as to render the trial fundamentally unfair. The denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court precedent.

***C. Batson Claim***

Hutchinson objects to the Magistrate Judge's finding that he is not entitled to relief on his *Batson* claim.[86] "The Constitution forbids striking even a single prospective juror for a discriminatory purpose."[87] Courts must analyze claims challenging the use of race-based peremptory strikes under the three-step test set forth by the Supreme Court in *Batson v. Kentucky*.[88] "A defendant must first make a prima facie case that race motivated the challenged strikes. If the

---

[84] *See Hutchinson*, 370 So. 3d at 784. This was a different firearm than the firearm Rullman recovered from Betty Boulevard.

[85] Rec. Doc. 6-1 at 1133.

[86] Rec. Doc. 10 at 4.

[87] *Flowers v. Mississippi*, 588 U.S. 284, 303 (2019).

[88] *Ramey v. Lumpkin*, 7 F.4th 271, 279 (5th Cir. 2021) (citing *Batson v. Kentucky*, 476 U.S. 79, 96–97 (1986)).

defendant carries this burden, the prosecutor must provide race-neutral reasons for the challenged strikes."[89] "Finally, at step three, the court considers whether the defendant has carried his burden of proving purposeful discrimination."[90] A federal habeas court may grant relief on a *Batson* claim only if the state court's adjudication of the claim "resulted in a decision that . . . involved an unreasonable application of the relevant law."[91]

At Hutchinson's trial, three panels of potential jurors underwent voir dire. At the conclusion of the voir dire of the first jury panel, the State used two of its peremptory challenges to remove Charlene Pastore ("Pastore"), an African-American or Hispanic female, and Charman Broome ("Broome"), an African-American male.[92] After all challenged jurors from the first panel were excused, Hutchinson raised a *Batson* challenge.[93] At the conclusion of voir dire of the second jury panel, the prosecution used a peremptory challenge to strike Mary Lewis ("Lewis"), an African-American female.[94] At that time, defense counsel raised a *Batson* challenge.[95]

The prosecution offered its reasons for striking Pastore, Broome, and Lewis.[96] The prosecutor offered multiple reasons for removing Broome: (1) he had a son incarcerated for possession of drugs; (2) he shook his head indicating that could not evaluate the law if there was no evidence of DNA or fingerprints; and (3) he said he would like to hear the defendant's testimony

---

[89] *Id.* (citing *Batson*, 476 U.S. at 96–98).

[90] *Id.* (citing *Batson*, 476 U.S. at 98)

[91] *Id.* (citations and quotation marks omitted).

[92] Rec. Doc. 6-1 at 1611, 1613.

[93] *Id.* at 1619.

[94] *Id.* at 1747.

[95] *Id.*

[96] *Id.* at 774–76.

to understand his version of the facts.[97] With regard to Pastore, the prosecutor explained that: (1) Pastore said that she did not know if she could vote to convict a defendant facing a life sentence; (2) she had a nephew who was murdered, and no suspects had been found; and (3) the prosecution had concerns about Pastore's position regarding self-defense.[98] The prosecution stated that it removed Lewis because she gave inconsistent answers as to whether she could vote to convict a defendant facing a life sentence.[99] The trial court found that the State provided valid reasons for exercising the challenges and denied the *Batson* challenge.[100]

With regard to the third jury panel, the prosecution used a peremptory challenge to excuse Tiffany Cook ("Cook"), an African-American female, and the defense raised another *Batson* challenge.[101] The prosecution explained that Cook had a brother who had been convicted of second degree murder and she believed that holding a gun was a threat.[102] The trial court found that the State had exercised a valid reason for exercising the peremptory challenge.[103]

Because the prosecution offered its reasons for the challenged strikes, the issue of whether defense counsel established a prima facie case of discrimination under step one was rendered moot.[104] At step two, the prosecutor provided reasons for removing the jurors that were not

---

[97] *Id.* at 774–75.

[98] *Id.* at 775.

[99] *Id.* at 775–76.

[100] *Id.* at 777.

[101] *Id.* at 1965.

[102] *Id.* at 1966.

[103] *Id.* at 1967.

[104] *United States v. Williams*, 264 F.3d 561, 571 (5th Cir. 2001) ("Where . . . the prosecutor tenders a race-neutral explanation for his peremptory strikes, the question of Defendant's prima facie case is rendered moot and our review is limited to the second and third steps of the *Batson* analysis.").

inherently indicative of discriminatory intent. At step three, the state courts found Hutchinson had not shown that intentional discrimination motivated the State's peremptory strikes. Hutchison must rebut the presumption of correctness afforded to this factual finding by clear and convincing evidence in order to show purposeful discrimination.[105] Hutchinson has not offered clear and convincing evidence to establish that the findings by the state courts were unreasonable, or not supported by the record, in such a manner as to overcome the presumption of correctness under the AEDPA.

## V. Conclusion

For the reasons stated above, Hutchinson has not shown that the state court's denial of relief on any of his asserted claims was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Accordingly,

**IT IS HEREBY ORDERED** that Hutchinson's objections are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Court **ADOPTS** the Magistrate Judge's recommendation and Petitioner Justin Hutchinson's petition for issuance for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED** and the petition is **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA**, this 24th day of September, 2026.

Nannette Jolivette Brown

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

[105] *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003); *Murphy v. Dretke*, 416 F.3d 427, 432 (5th Cir. 2005) ("A state trial court's finding of the absence of discriminatory intent is a pure issue of fact that is accorded great deference and will not be overturned unless clearly erroneous. Our role on appeal is to determine whether the trial court's determination of the prosecutor's neutrality with respect to race was objectively unreasonable and has been rebutted by clear and convincing evidence to the contrary.").